IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARCK A. ANARIBA MARTINEZ,<br><br>Petitioner,<br><br>vs.<br><br>DAVID EASTERWOOD, Field Office Director for Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement; TIM DECKER, Sheriff of Dakota County, Nebraska; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; and TODD BLANCHE, Acting Attorney General of the United States,<br><br>Respondents. | **4:26CV3182**<br><br><br>**MEMORANDUM AND ORDER ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Marck A. Anariba Martinez, a citizen of Honduras, entered the United States alone in May 2023 when he was 17 years old. Filing 1 at 1. He was arrested and detained by United States Border Patrol, then given paperwork by the Office of Refugee Resettlement (ORR) and released to his sister as an unaccompanied child (UAC). Filing 1 at 1; Filing 13 at 3 (¶ 14). Anariba Martinez filed the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 now before the Court following his re-detention by Immigration and Customs Enforcement (ICE) in May 2026 without a meaningful bond process after he was found in the Emmet County Jail in Iowa on drug and driving charges. Filing 1 at 1–2; Filing 13 at 4 (¶¶ 16–17). He asserts nine claims for habeas relief. Filing 1 at 17–21. In addition to his Petition, Anariba Martinez has filed a Motion for Summary Judgment and to Grant Habeas Petition as Unopposed also now before the Court based on the alleged failure of Respondents to file a timely return in response to his Petition. Filing 10

1

at 2–3 (¶ 4, prayer). For the reasons stated below, both Anariba Martinez's Motion for Summary Judgment and his Petition for Writ of Habeas Corpus are denied.

## I.  INTRODUCTION

### A.  Factual Background

The factual background here is drawn primarily from Anariba Martinez's Petition and attached documents. It is then supplemented where appropriate with facts drawn from the documents attached to the Federal Respondents' return.[1]

### 1.  Anariba Martinez's Entry into the United States

Anariba Martinez alleges in his Petition, "DHS's eROP uses several spelling variations for Petitioner's name, including Anaribaz-Martinez, Mark Antony, and Anariba-Martinez, Marck Antony. Petitioner uses the spelling Marck A. Anariba Martinez." Filing 1 at 5 (¶ 14). Anariba Martinez does not dispute in his Petition that these names all identify the same person, *i.e.*, the petitioner in this action.

Anariba Martinez, who is now 20 years old, is a native and citizen of Honduras who entered the United States alone on or about May 29, 2023, when he was seventeen years old. Filing 1 at 5 (¶ 16) ("The Government's own Form I-213 states that [Anariba Martinez's] last entry was on May 29, 2023, near Eagle Pass, Texas, without inspection, and that he was born on September 23, 2005."). Anariba Martinez was arrested on May 29, 2023, by United States Border Patrol near Eagle Pass, Texas, and served with a Notice to Appear (NTA). Filing 1 at 6 (¶ 17). He alleges that at the time he was served the NTA at the border, "he was placed in section 240 [8 U.S.C. § 1229a] proceedings per 8 U.S.C. § 1232(a)(5)(D)." Filing 1 at 6 (¶ 20) (bracketed language inserted).

---

[1] The Federal Respondents are all but the county sheriff, respondernt Tim Decker (the State Respondent). Only the Federal Respondents have so far filed a Return, Filing 11, in response to Anariba Martinez's Petition and Motion for Summary Judgment.

Anariba Martinez alleges that after he was encountered by Border Patrol, he was placed in a shelter, completed immigration paperwork, received paperwork associated with the ORR process for unaccompanied minors (UAC), and released as a UAC. Filing 1 at 6 (¶ 18). According to Federal Respondents' declarant, Deportation Officer A. Bates, Anariba Martinez was released to the custody of his sister in Worthington, Minnesota. Filing 13 at 3 (¶ 14); *see also* 6 U.S.C. § 279(b)(3) (authorizing ORR to place UACs); 6 U.S.C. § 279(b)(4) (explaining that "[n]othing in paragraph (2)(B) may be construed to require that a bond be posted for an unaccompanied alien child who is released to a qualified sponsor").

2.  *Anariba Martinez's Re-Detention*

Anariba Martinez alleges that "ICE encountered [him] at the Emmet County, Iowa jail during Criminal Apprehension Program operations after a traffic stop." Filing 1 at 2. Federal Respondents' declarant provides more detail:

> On May 9, 2026, Petitioner was arrested for operating while under the influence-1st offense, possession of a controlled substance-marijuana, failure to provide proof of financial responsibility[,] no valid driver's license[,] and failure to obey traffic control device in Emmet County, Iowa. ICE was notified of the Petitioner's arrest by the Emmet County Jail. An ICE Officer conducted record checks and verified Petitioner's immigration status, and an ICE detainer and Warrant for Arrest of Alien were lodged with the Emmet County Jail.

Filing 13 at 4 (¶ 16); Filing 1 at 7 (¶ 26) (alleging that DHS records show these reasons for Anariba Martinez's arrest). Anariba Martinez alleges that he had appeared in immigration court on multiple occasions, so "DHS therefore located him through an already-existing section 240 [8 U.S.C. § 1229a] removal case." Filing 1 at 7 (¶ 22) (bracketed language inserted). Anariba Martinez alleges that the Iowa state charges have now been dismissed. Filing 1 at 7 (¶ 27); Filing 2-1 at 1 (Iowa Courts Online Electronic Docket Record Search result showing the charge of possession of drug paraphernalia, a simple misdemeanor, was dismissed by the court on May 28, 2026); Filing 2-2 (Iowa Courts Online Electronic Docket Record Search result showing the charges of operating

3

while under the influence and possession of controlled substance (marijuana), both serious misdemeanors, were dismissed by the court on May 28, 2026).[2]

Federal Respondents have submitted the ICE detainer and Warrant for Arrest that Federal Respondents' declarant avers were "lodged" with the Emmet County Jail. The DHS Warrant for Arrest of Alien for Anariba Martinez (identified as Anaribaz-Martinez, Mark), Form I-200, (First Warrant) is directed "To: Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. §§ 1226 and 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." Filing 13-2 at 1 (bracketed language inserted). The box ticked on the First Warrant to show the basis for probable cause that Anariba Martinez is removable indicates "the pendency of ongoing removal proceedings against the subject." Filing 13-2 at 1 (also showing boxes ticked for biometric confirmation of the subject's identity and a records check showing removable status as well as voluntary statements by the subject indicating the same thing). The First Warrant includes a Certificate of Service showing that it was served on Anariba Martinez at Estherville, Iowa, on May 9, 2026, and that the contents were read to him in Spanish by Deportation Officer Palmer. Filing 13-1 at 1.

An Immigration Detainer – Notice of Action, Form I-247A, (Detainer) provided to the Emmet County Jail was also dated May 9, 2026, and prepared by DO Palmer. Filing 13-3 at 1. In contrast to the First Warrant, the box ticked on the Detainer to show the basis for probable cause that Anariba Martinez is removable indicates "A final order of removal against the individual." Filing 13-3 at 1. The Certificate of Service on the Detainer shows that it was served on Anariba Martinez on May 12, 2026, in person by a different officer, Deputy Creach. Filing 13-3 at 2.

---

[2] It is not clear that Anariba Martinez submitted the full printout from an Iowa Courts Online Electronic Docket Record Search showing the disposition of his charges, because Filing 2-2 appears truncated, and Filing 2-1 and Filing 2-2 together do not list all the offenses with which Anariba Martinez was charged. However, Federal Respondents do not dispute that the state charges against Anariba Martinez in Iowa have been dismissed.

Anariba Martinez alleges that on May 13, 2026, ICE Enforcement and Removal Operations (ERO) from Sioux City, Iowa, came to the Emmet County Jail, identified itself, placed him under arrest, and transported him to ERO Sioux City for processing. Filing 1 at 8 (¶ 30). Contrary to the certificates of service on the First Warrant and the Detainer, Anariba Martinez alleges that he was not served with a warrant, immigration detainer, or other custody documents at the time ICE took him from the jail and that he only received paperwork later, after he was already in ICE custody. Filing 1 at 8 (¶ 31). He alleges that after processing, he was transferred to the Dakota County Jail in Dakota City, Nebraska. Filing 1 at 8 (¶ 33).

Federal Respondents agree that on May 13, 2026, Anariba Martinez was released to ICE custody. Filing 13 at 4 (¶ 17). They add that Anariba Martinez was then served with a second Warrant for Arrest of Alien, Form I-200 (Second Warrant). Filing 13 at 4 (¶ 17). Federal Respondents' declarant states, "Petitioner was detained pursuant to INA§ 235(b)(2)(A) [8 U.S.C. § 1225(b)(2)(A)] and placed in removal proceedings and charged under 212(a)(6)(A)(i)(I) [8 U.S.C. § 1182(a)(6)(A)(i)(I)] (an alien present without admission or parole)." Filing 13 at 4 (¶ 17) (bracketed language inserted). Federal Respondents have submitted no evidence setting out the specific statute under which Anariba Martinez was detained, such as 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226. The Second Warrant, like the First Warrant, has the box ticked to show that the basis for probable cause that Anariba Martinez is removable was "the pendency of ongoing removal proceedings against the subject." Filing 13-4 at 1. The Second Warrant includes a Certificate of Service dated May 13, 2026, showing that it was served at Sioux City, Iowa, on Anariba Martinez and read to him in Spanish by DO Brannaker. Filing 13-4 at 1.

3. *Immigration Proceedings*

Anariba Martinez alleges,

> [He] has appeared in immigration court on multiple occasions. He recalls attending approximately three immigration court dates after the immigration process began. He remembers being asked questions about why he came to the United States and related matters. He did not understand that anything had ended his case or that he had no active proceedings.

Filing 1 at 6 (¶ 21). The Petition does not indicate the times when any of these appearances in immigration court occurred.

Federal Respondents have submitted more evidence about Anariba Martinez's immigration status. Specifically, on May 27, 2025, almost a year before Anariba Martinez's re-detention, ICE ERO discovered that the original NTA for Anariba Martinez—who by that time had reached the age of 18 years—was not filed with the immigration courts. Filing 13 at 5 (¶ 15). Consequently, a new NTA was issued that day and mailed to the address on file, that is, an address in Worthington, Minnesota. Filing 13 at 4 (¶ 14) (Dec. of DO Bates); Filing 13-1 a 1–2 (New NTA).[3] That New NTA stated that it was "[i]n removal proceedings under section 240 of the Immigration and Nationality Act [8 U.S.C. § 1229a]," and stated that Anariba Martinez was "an alien present in the United States who has not been admitted or paroled." Filing 13-1 at 1 (bracketed language inserted). The New NTA alleged further that Anariba Martinez was not a United States citizen; was a native and citizen of Honduras; entered the United States on or about May 29, 2023; and was "not then admitted or paroled after inspection by an Immigration Officer." Filing 13-1 at 1. The New NTA charged Anariba Martinez with being subject to removal from the United States pursuant to the following provision of law:

> 212(a) (6) (A) (i) of the Immigration and Nationality Act [8 U.S.C. § 1182(a)(6)(A)(i)], as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

---

[3] The respondent in the NTA is identified as "MARK ANTONY ANARIBAZ-MARTINEZ AKA . . . ANARIBAZ MARTINEZ, MARK ANTONY." Filing 13-1 at 1.

Filing 13-1 at 1 (bracketed language inserted).

The Department of Homeland Security's (DHS's) Record of Deportable/Inadmissible Alien, Form I-213, (I-213 Record) completed on May 13, 2026, states, "ANARIBAZ has no pending applications." Filing 2 at 3. It also states, "ANARIBAZ claims to not have fear of harm or persecution if returned to Honduras." Filing 2 at 3. Nevertheless, Anariba Martinez alleges that he is awaiting a receipt notice for an asylum application under the Trafficking Victims Protection Reauthorization Act of 2009 (TVPRA). Filing 1 at 7 (¶ 23). Anariba Martinez does not allege when or how he submitted that asylum application nor does he provide a copy of it. Anariba Martinez alleges that his filing of an asylum application demonstrates that the I-213 Record is incorrect as to statements about "no pending applications" and "no fear." Filing 1 at 7 (¶ 23).

Federal Respondents' declarant avers that an immigration judge (IJ) held a hearing on June 16, 2026, in Anariba Martinez's removal proceedings at which Anariba Martinez's counsel requested more preparation time. Filing 13 at 4 (¶ 18). Nothing in the record indicates that Anariba Martinez or his counsel requested bond or a bond hearing but was denied bond or a bond hearing at the June 16, 2026, hearing or at any other time. Federal Respondents' declarant avers further that no examining immigration officer has determined that Anariba Martinez is clearly and beyond a doubt entitled to be admitted to the United States. Filing 13 at 4 (¶ 19). He also avers that Anariba Martinez remains detained in the Dakota County Jail, and that his next appearance before an IJ was scheduled for July 14, 2026. Filing 13 at 4 (¶ 20). The record contains no information about whether that appearance occurred or if it did what actions were requested or ordered.

### B. Procedural Background

#### 1. The Petition

Anariba Martinez filed his Petition for Writ of Habeas Corpus in this action on June 19, 2026. Filing 1. In it, he asserts nine claims for relief. The first four Counts are premised on

violations of 8 U.S.C. § 1357, which states the powers of immigration officers and employees. Count I asserts a claim entitled "Violation of 8 U.S.C. § 1357." Filing 1 at 17 (reduced from all capital letters). Count II asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Violation of 8 U.S.C. § 1357." Filing 1 at 17 (reduced from all capital letters). Count III asserts a claim entitled "Violation of the Fourth Amendment of the United States Constitution, Unlawful Seizure," based on violation of 8 U.S.C. § 1357. Filing 1 at 18 (reduced from all capital letters). Count IV asserts a claim entitled "Violation of the Fifth Amendment of the United States Constitution Arising from Violation of 8 U.S.C. § 1357 and Failure to Afford Required Pre-Deprivation Process." Filing 1 at 18 (reduced from all capital letters).

The next three Counts challenge Anariba Martinez's detention without bond based on an allegation that 8 U.S.C. § 1225 is inapplicable. Count V asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Denial of Bond on the Theory that Petitioner Is Subject to 8 U.S.C. § 1225(b)(2) Despite His UAC/ORR Custody and Release History." Filing 1 at 19 (reduced from all capital letters). Count VI asserts a claim entitled "Violation of the Fifth Amendment of the United States Constitution Arising from Denial of Bond on the Theory that Petitioner Is Subject to 8 U.S.C. § 1225(b)(2) Despite His UAC/ORR Custody and Release History." Filing 1 at 19 (reduced from all capital letters). Count VII asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Respondents' Reversal of Their Own Prior Treatment of Petitioner as a Section 236 [8 U.S.C. § 1226] Detainee." Filing 1 at 20 (reduced from all capital letters) (bracketed language inserted).

The last two Counts allege violations of certain regulations. Count VIII asserts a claim entitled "Violation of 8 C.F.R. §§ 236.1 and 1003.19." Filing 1 at 20 (reduced from all capital

letters). Count IX asserts a claim entitled "Violation of the Fifth Amendment of the United States

Constitution Arising from Violation of 8 C.F.R. §§ 236.1, 236.3(m) and 1003.19." Filing 1 at 21

(reduced from all capital letters).

Anariba Martinez seeks the following relief on his Petition:

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Issue an order to show cause within three days as to why the writ should not issue;

3. Declare that Petitioner's arrest and detention violate 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.7, 8 C.F.R. §§ 236.1, 236.3(m), and 1003.19, the Administrative Procedure Act, the Fourth Amendment, and the Due Process Clause of the Fifth Amendment;

4. Declare that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is detained, if at all, under 8 U.S.C. § 1226(a);

5. Order Petitioner's immediate release;

6. Alternatively, order Respondents to provide Petitioner a bond redetermination hearing under 8 U.S.C. § 1226(a) on the merits of his release within three business days, at which DHS bears the burden of proving by clear and convincing evidence that continued detention is necessary because Petitioner is a danger or flight risk and that no conditions of release can reasonably address those interests;

7. Order Respondents to produce any I-247A, I-200, custody determination, certificate of service, local jail service record, custody redetermination paperwork, transfer paperwork, and documentation relied upon to justify Petitioner's arrest and detention;

8. Order Respondents to file a declaration confirming compliance with any release or bond-hearing order and identifying Petitioner's location and custody status; and

9. Grant any other and further relief this Court deems just and proper.

Filing 1 at 21–22 (Prayer for Relief).

With his Petition, Anariba Martinez filed a Supplement consisting of three documents. The

first document is the I-213 Record for Anariba Martinez dated May 13, 2026, that is, the date he

was taken into custody by ICE from the Emmet County Jail. Filing 2 at 1–4. The second and third documents are the Iowa Courts Online Electronic Docket Record Search results for several of the Iowa charges against Anariba Martinez. Filing 2-1; Filing 2-2.

 2.  *Subsequent Orders and Filings*

This case was randomly assigned to the undersigned on June 22, 2026. Filing 3. On June 25, 2026, the Court entered an Order to Show Cause ordering Anariba Martinez to serve his Petition and a copy of the Order to Show Cause on Respondents without delay and then to file proof of such service with the Court within twenty-four hours of effecting such service. Filing 4 at 4. The Court directed Respondents to "make a return certifying the true cause of Anariba Martinez's detention and why his Petition should not be granted not later than three business days after service of Anariba Martinez's Petition and this Order to Show Cause." Filing 4 at 4. Next, the Court ordered that Anariba Martinez would have three business days after Respondents filed their return(s) to file any reply. Filing 4 at 4. Finally, the Order to Show Cause stated, "Upon the filing of Respondent's return(s) and Anariba Martinez's reply, the Court will promptly determine whether to set a hearing on this matter." Filing 4 at 4 (¶ 5).

Summonses were requested and issued on June 26, 2026. Filings 5–8. On June 28, 2026, Anariba Martinez's counsel filed a Certificate of Service stating, "I certify that on June 26, 2026, I served the exhibits and June 25, 2026 Order to Show Cause as well as the summons which I am returning executed, via certified mail to the addresses shown on the summons for each of the Respondents." Filing 9-1 at 1. The copies of the Proofs of Service filed with the Certificate of Service did not include any certified mail delivery receipts for any Respondents. Filing 9 at 1–10.

On July 6, 2026, Anariba Martinez filed the Motion for Summary Judgment and to Grant Habeas Petition as Unopposed that is also now before the Court asserting that he is entitled to his requested habeas relief because Respondents failed to file Return(s) by the Court-ordered deadline,

10

which he argued was July 1, 2026. Filing 10 at 2 (¶ 4). On July 8, 2026, the Federal Respondents filed their Response to the Petition for Writ of Habeas Corpus (Return), Filing 11, in which the Federal Respondents stated *inter alia* that they "oppose Petitioner's recent Motion for Summary Judgment" for reasons similar to those stated in opposition to the Petition. Filing 11 at 2. Federal Respondents' Return was supported by an Index of Evidence, Filing 12, and the Declaration of DO Bates, Filing 13. Four documents are attached to that Declaration. The first document is the May 27, 2025, Notice to Appear, Form-862 (the New NTA). Filing 13-1. The second document is the May 9, 2026, Warrant for Arrest of Alien, Form I-200 (First Warrant). Filing 13-2. The third document is the May 9, 2026, Immigration Detainer, Form I-247A (Detainer). Filing 13-3. The fourth document is the second Warrant for Arrest of Alien, Form I-200, (Second Warrant) dated May 12, 2026, and served on Anariba Martinez on May 13, 2026. Filing 13-4. On July 7, 2026, Anariba Martinez filed his Reply in Support of Motion for Summary Judgment and Response to Federal Respondents' Return (Reply). Filing 14.

Anariba Martinez's Petition and Motion for Summary Judgment are now fully submitted.

## II.  PRELIMINARY MATTERS

### A.  Subject-Matter Jurisdiction

The Court finds it must first address an issue of subject-matter jurisdiction. Federal courts "have an independent obligation to assure ourselves of subject-matter jurisdiction." *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 867 (8th Cir. 2025) (quoting *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 941 (8th Cir. 2024)); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) (explaining that a court "ha[s] an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits"). Consequently, the Court must *sua sponte* assess whether it has subject-matter jurisdiction over this action or all claims in this action, even if the issue was not raised by the parties. *See Lee v. Sanders*, 943 F.3d 1145, 1148

11

(8th Cir. 2019) ("[W]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.") (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). This Court has taken the position that it will not proceed further on a petition for habeas corpus relief pursuant to § 2241 until the record demonstrates that the petitioner's physical custodian has been served, thus establishing the Court's subject-matter jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35, 442 (2004) (concluding that the proper respondent to a habeas petition is the person who has custody over the petitioner).

Anariba Martinez's physical custodian is Tim Decker, the Sheriff of Dakota County, Nebraska (the State Respondent), Filing 1, but the State Respondent has neither appeared through counsel nor filed any return. The purported proofs of service attached to Anariba Martinez's counsel's Certificate of Service include one directed to the State Respondent. Filing 9 at 1. Because Federal Respondents acknowledge receipt of service on July 6, 2026, the Court finds that the State Respondent has both been served with and received the summons.[4] *See Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (stating that there is a presumption that mail is delivered and received but that presumption can be rebutted by evidence of non-receipt). Thus, the Court concludes that it has subject-matter jurisdiction and may proceed with the case. *Padilla*, 542 U.S. at 434–35, 442.

### B. The Need for a Hearing

The next preliminary question concerns whether the Court is required to hold a hearing on Anariba Martinez's Petition. After reviewing the parties' written submissions, the Court concludes that an evidentiary hearing is not required because a conclusion can be reached on the legal issues

---

[4] In the Court's experience, when State Respondents file returns in similar habeas actions by aliens, they most often assert that they have been served only as the alien's physical custodian, so they take no position on the substantive issues raised in the habeas petition or on whether a writ of habeas corpus should be issued.

12

presented. Also, the dispositive facts are undisputed, or if disputed, non-speculative. non-conclusory, and Anariba Martinez's allegations are taken as true, they fail to state a claim for habeas relief. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court will consider Anariba Martinez's Petition on the parties' written submissions without an evidentiary hearing.

### III. THE MOTION FOR SUMMARY JUDGMENT

The Court will first dispose of Anariba Martinez's Motion for Summary Judgment and to Grant Habeas Petition as Unopposed. Filing 10.

### A. Non-Compliance with NECivR 56.1(a)

The Court observes first that Anariba Martinez's Motion for Summary Judgment is based on a hypertechnical issue of timely responses to his Petition and the Court's Order to Show Cause, but Anariba Martinez's Motion for Summary Judgment utterly fails to comply with the technical requirements of NECivR 56.1(a) for a motion for summary judgment. Specifically, Anariba Martinez's Motion is deficient because it is unsupported by a brief or a statement of facts. NECivR 56.1(a). The local rule states that if a party fails to comply with its requirements, "the court may require immediate compliance or provide any other relief that the court deems appropriate." NECivR 56.1(e).

The Court concludes that more time would be wasted in requiring Anariba Martinez to comply with the local rule than the Motion merits in this case. *Id.* The Court could simply deny the Motion as a nullity because that would be "appropriate" relief for noncompliance with NECivR 56.1(a) in this case. *Id.* However, Federal Respondents oppose Anariba Martinez's Motion for Summary Judgment on the merits rather than for failure to comply with the applicable local rule,

Filing 11 at 5, so the Court will address the Motion for Summary Judgment on the merits rather than impose any sanction for noncompliance with the local rule. That course is all the more appropriate where the Court concludes that the Motion should be denied.

### B.  Consideration on the Merits

#### 1.  *The Parties' Arguments*

The parties' arguments on the Motion for Summary Judgment are concise. The basis for Anariba Martinez's Motion for Summary Judgment is that the deadline for Respondents to file their Return(s) was July 1, 2026, but Respondents failed to meet that deadline. Filing 10 at 2. Anariba Martinez argues that as a consequence of that failure the factual allegations in his Petition are uncontroverted, and he is entitled to the relief he seeks. Filing 10 at 2. Federal Respondents assert that their Return, filed on July 8, 2026, was timely. Filing 11 at 5. They argue, "The United States Attorney's Office for the District of Nebraska was served on Monday July 6th with the Petition," so they "ask this Court to deny Petitioner's supposed Motion for Summary Judgment filed the same day." Filing 11 at 5. In reply, Anariba Martinez asserts that Federal Respondents' Return is untimely because service was completed on June 26, 2026, when Anariba Martinez's counsel sent copies of the Petition and the Order to Show Cause to Respondents by certified mail, rather than on July 6, 2026, when the United States Attorney's Office apparently received the summonses. Filing 14 at 2. Anariba Martinez asserts further,

> To the extent Rule 5 applies, service by mail is complete upon mailing. Fed. R. Civ. P. 5(b)(2)(C). Section 2243 also requires a prompt return, and the Court's order set the controlling deadline. Respondents cannot extend that deadline by pointing to when the U.S. Attorney's Office internally received or processed the mailing.

Filing 14 at 3.

14

### 2. The Time to File a Return

Given the Court has now had to respond to this argument on summary judgment, the Court acknowledges it could have stated in its Order to Show Cause—and certainly will in the future in similar proceedings—that Respondents' Return(s) would be due not later than three business days after "receipt" of the Petition and the Order to Show Cause instead of not later than three business days after "service" of the Petition and the Order to Show Cause. Filing 4 at 4.

Indeed, the Supreme Court has explained, "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996). However, this Court did not use wording in the Order to Show Cause in this case that would have ensured that the core function of notice of the Petition before a deadline to respond was fulfilled. Hence, the Court must now address Anariba Martinez's timeliness argument in his Motion for Summary Judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether or not a court should grant summary judgment often turns on whether or not genuine issues of material fact are apparent on the record, but legal questions, which are typically decided by courts, may also be decided at summary judgment. *Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022).

Assuming for the sake of argument that the Federal Rules of Civil Procedure apply to service of a habeas petition pursuant to 28 U.S.C. § 2241, Federal Rule of Civil Procedure 5—on which Anariba Martinez's timeliness argument in part relies—has nothing to do with service of process of an initial complaint or petition. Rather, Federal Rule of Civil Procedure 5 expressly applies to "a pleading filed after the original complaint" and to "other papers." Fed. R. Civ. P. 5(a).

15

Federal Rule of Civil Procedure 4(i) is the provision of the Federal Rules of Civil Procedure specifically applicable to service of process for an original pleading on federal officers such as the Federal Respondents. Fed. R. Civ. P. 4(i) (stating requirements for "[s]erving the United States and Its Agencies, Corporations, Officers, or Employee").[5] Rule 4(i) expressly permits service by "registered or certified mail," as was done here. *See id.*

Even so, Rule 4(i) may not matter because Federal Rule of Civil Procedure 81(a)(4) states that the Federal Rules of Civil Procedure apply *inter alia* "to proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Rule 3 of the Rules Governing Section 2255 Cases (Habeas Rules) specifies the practice for service in habeas cases: It requires that after filing of a habeas petition, "[t]he clerk must then deliver or serve a copy of the [petition] on the United States attorney . . . together with a notice of its filing." The Rules Governing Section 2254 Cases do not address service at all. Instead, Rule 4 of those Rules provides for preliminary review of the petition by a district judge, and Rule 5 of those Rules provides, "The respondent is not required to answer the petition unless a judge so orders."

Under Federal Rule of Civil Procedure 81(a)(4), the Habeas Rules would not matter either if a statute governs the issue of how the respondents receive notice and how long they have to respond to a habeas petition. *See* Fed. R. Civ. P. 81(a)(4) (listing a federal statute ahead of the

---

[5] As a district judge in this Circuit cogently put it, "Rule 5 allows service of motions and certain other papers on counsel who has entered an appearance on behalf of a party. Rule 4 governs service of an original complaint or a pleading which asserts a new claim for relief." *Greater St. Louis Const. Laborers Welfare Fund v. Gen. Site Servs., LLC*, No. 4:12CV791 CDP, 2013 WL 5887994, at *2 n.3 (E.D. Mo. Oct. 31, 2013). Moreover, a respected commentator on the Federal Rules of Civil Procedure observed that "the general introductory language of Rule 5(a), 'except as otherwise provided in these rules,' recognizes that special provisions for the service of papers found elsewhere in the rules take precedence over RULE 5." Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1143 (2002).

Rules Governing Section 2255 Cases if the statute sets out a practice for habeas proceedings). The

statute setting out procedures applicable to a habeas petition pursuant to 28 U.S.C. § 2241 is 28

U.S.C. § 2243. Section 2243 states the following in pertinent part:

> The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

28 U.S.C. § 2243. Although this part of the statute is not cast in terms of "service," it plainly states

the procedure in a § 2241 habeas case intended to satisfy the "core function of service," which is

to give the respondent notice of the pendency of the petition and the time for a response.

*Henderson*, 517 U.S. at 672

That core function is highly unlikely to be fulfilled if the three days to respond to a § 2241

habeas petition run from the date the petition is dropped in the mail. Over fifty years ago, a district

judge observed,

> Section 2243 and [former] Rule 81(a)(2) [now Rule 81(a)(4) as of 2008] are unclear . . . concerning the date from which the three days for a return are to be given. These provisions could mean that the three days begin to run from the date of the issuance of the writ or order. Even with the modern means of communication (or perhaps because of them), it would be unreasonable to expect a respondent to make a return that quickly. Indeed, in some cases the order to show cause may not have even been received three days after the issuance. Therefore, the Court reads the statute and the Rule to allow the time for a return at least from the date of service of process. Indeed there may be good reason for allowing the three days after the formal request for representation is made upon the Attorney-General's office. The Court need not adopt one date or the o[th]er here, however. If the three days were to be calculated from the date of service of process, the violation of the three-day time limit here would be a technical one not prejudicial to petitioner. Again, respondent and his counsel acted as quickly as this Court could require.

*Troglin v. Clanon*, 378 F. Supp. 273, 281 (N.D. Cal. 1974).

3. *Federal Respondents Had Good Cause to File a Return After Anariba Martinez's Asserted Deadline*

Notwithstanding that the means of communication may be even more "modern" now, it

would still be unreasonable to expect a respondent to make a return before the petition and order

17

to show cause were even received. *Id.* The Court observes that starting the running of the time to answer a complaint in most federal civil cases upon service rather than receipt would make little difference because of the much longer timeframe that defendants have to move or plead in response. *See* Fed. R. Civ. P. 12(a)(2) (granting the United States and its agencies, officers, or employees sued in their official capacities 60 days after service on the United States attorney to move or plead in response to a complaint). However, starting the running of the three days to respond to a § 2241 habeas petition on the date of service makes it possible—even likely—that if service is by mail, the petition will not even be received by respondents before the deadline for a return has expired. *See Troglin*, 378 F. Supp. at 281 (making this observation more than fifty years ago).

Nevertheless, this Court like the court in *Troglin* need not adopt a reading of § 2243 that starts the running of the three days for a return to a habeas petition under § 2241 from either service or receipt of the petition by respondents. *Id.* That is so when § 2243 appears to recognize that more than three days may be required to receive notice and formulate a response because the statute provides for a return to be filed "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *See* 28 U.S.C. § 2243; *and compare* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). Section 2243 does not require the respondent to request the additional time to respond but simply states that if "allowed" the time may be extended "for good cause." 28 U.S.C. § 2243. Of course, it is a court that would "allow" such an extension.

The Court has no hesitation finding that Federal Respondents have "good cause" for failing to respond to Anariba Martinez's Petition and the Order to Show Cause by July 1, 2026—the

18

deadline that Anariba Martinez asserts is applicable—where Federal Respondents did not even receive the Petition and the Order to Show Cause until July 6, 2026. *See* 28 U.S.C. § 2243. The Federal Respondents filed their Return just two days after receiving the Petition and Order to Show Cause, which the Court finds is "as quickly as this Court could require." *See Troglin*, 378 F. Supp. at 281 (finding that respondents had filed their return "as quickly as this Court could require"). Federal Respondents' Return was filed well within the twenty days that § 2243 authorizes for an extension of the deadline. 28 U.S.C. § 2243.

Anariba Martinez in reality makes a hypertechnical "gotcha" argument in support of summary judgment. Martinez did so despite common sense and logic dictating that an opposing party cannot respond to a pleading that party has not even received. Further, the statute clearly allows extension for good cause, and indeed this Court cannot fathom why good cause would not include the situation where the party could not have responded within the alleged time required because they had not even received the document. Also, conspicuous by its absence from Anariba Martinez's Motion for Summary Judgment is any argument that even hints that Anariba Martinez suffered any prejudice as a result of the filing of Federal Respondents' Return seven days later than Anariba Martinez expected it. *See Troglin*, 378 F. Supp. at 281 (finding that the violation of the three-day time limit in that case would be a technical one not prejudicial to the petitioner). In the absence of any hint of prejudice, Anariba Martinez's argument for summary judgment was borderline frivolous, was certainly a waste of the Court's time and resources, and did not advance Anariba Martinez's case at all.

Anariba Martinez's Motion for Summary Judgment is denied.

### IV. THE PETITION FOR WRIT OF HABEAS CORPUS

Denial of Anariba Martinez's Motion for Summary Judgment means that the Court must address Anariba Martinez's Petition for Writ of Habeas Corpus on the merits. As the first step in

the analysis of the merits, the Court sets out a summary of the standards applicable to a § 2241 habeas petition.

### A. Standards for § 2241 Habeas Relief

Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Anariba Martinez. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))).

The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

As pointed out above in § I.B.1., Anariba Martinez's nine claims for habeas relief fall into three groups: The first four claims are premised on violations of 8 U.S.C. § 1357; the next three claims challenge Anariba Martinez's detention without bond on the ground that 8 U.S.C. § 1225

is inapplicable; and the last two claims are premised on violations of certain regulations. The Court will apply the standards above to these groups of claims in turn.

## B. Violations of 8 U.S.C. § 1357

### 1. *The Statute and the Claims*

Section 1357 of Title 8 of the United States Code is entitled "Powers of immigration officers and employees." 8 U.S.C. § 1357. The specific provision Anariba Martinez relies on for his four § 1357 claims, *see* Filing 1 at 11, states the following:

**(a) Powers without warrant**

Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant--

* * *

(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]

8 U.S.C. § 1357(a)(2).

In Anariba Martinez's Petition, Count I asserts a claim entitled "Violation of 8 U.S.C. § 1357." Filing 1 at 17 (reduced from all capital letters). This Count alleges,

Because Respondents violated the provisions of 8 U.S.C. § 1357 in effecting a warrantless arrest without satisfying the statutorily required conditions including a properly executed I-247A, the resulting arrest and custody of Petitioner are unlawful.

Filing 1 at 17 (Count I, ¶ 2). Count II asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Violation of 8 U.S.C. § 1357."

Filing 1 at 17 (reduced from all capital letters). This Count alleges,

> Because Respondents violated 8 U.S.C. § 1357 in effecting Petitioner's arrest, Respondents acted arbitrarily, capriciously, not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, and without observance of procedure required by law. The resulting detention is unlawful.

Filing 1 at 17 (Count II, ¶ 2). Count III asserts a claim entitled "Violation of the Fourth Amendment of the United States Constitution, Unlawful Seizure." Filing 1 at 18 (reduced from all capital letters). This Count alleges,

> Because Respondents violated 8 U.S.C. § 1357 in effecting Petitioner's seizure without satisfying the statutory requirements for a warrantless immigration arrest, Respondents subjected Petitioner to an unreasonable seizure in violation of the Fourth Amendment. The resulting detention is unlawful and is cognizable in habeas as the Petitioner is in custody as a direct result of violations of the United States law.

Filing 1 at 18 (Count III, ¶ 2). Count IV asserts a claim entitled "Violation of the Fifth Amendment of the United States Constitution Arising from Violation of 8 U.S.C. § 1357 and Failure to Afford Required Pre-Deprivation Process." Filing 1 at 18 (reduced from all capital letters). This Count alleges,

> Because Respondents arrested and detained Petitioner without satisfying the conditions imposed by 8 U.S.C. § 1357 and without conducting the pre-deprivation inquiries required before depriving him of liberty, Respondents arbitrarily deprived Petitioner of liberty without due process of law in violation of the Fifth Amendment.

Filing 1 at 18 (Count IV, ¶ 2).

### 2. The Parties' Arguments

The crux of Anariba Martinez's arguments in support of his first four claims is this: "If DHS did not validly serve or execute [a detainer and a warrant], then [his] arrest and transfer were unlawful under 8 U.S.C. § 1357, 8 C.F.R. § 287.7, the Fourth Amendment, the Due Process Clause,

22

and the [Administrative Procedure Act (APA)]." Filing 1 at 2 (bracketed language inserted).

Anariba Martinez argues the following in what he calls the "legal framework" for "[w]arrantless

arrests under 8 U.S.C. § 1357(a)(2)":

> 43. Section 1357 strictly limits warrantless immigration arrests. It permits an immigration officer to arrest without a warrant only when the officer has reason to believe the person is in the United States in violation of law and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2). These requirements are statutory constraints on executive power, not discretionary suggestions.

> 44. Where DHS has time to run database checks, lodge a detainer, have a supervisory officer issue an I-200, wait several days, and then come to a county jail to assume custody, DHS cannot plausibly claim the person was likely to escape before a warrant could be obtained. If the Government cannot produce a validly served warrant, the arrest must be judged as a warrantless arrest and fails under § 1357(a)(2).

Filing 1 at 11 (¶¶ 43–44). Anariba Martinez argues that no valid warrant was served on him and

that DHS had plenty of time between first encountering him in the Emmet County Jail on May 9,

2026, and taking him into DHS custody on May 13, 2026, to obtain and serve a valid warrant,

showing that his arrest was warrantless under § 1357. Filing 1 at 15 (¶¶ 59–60).

Federal Respondents argue as a threshold issue that Anariba Martinez cannot challenge his

arrest in habeas proceedings because habeas relief is available only as to his current detention.

Filing 11 at 12. They argue further that the habeas court does not review all possible previous

errors but asks only whether the confinement is justified. Filing 11 at 12. Federal Respondents'

primary argument against relief on Anariba Martinez's § 1357 claims, however, is that Anariba

Martinez makes false claims about his arrest. Filing 11 at 1. Federal Respondents point out that

contrary to Anariba Martinez's arguments, the two Warrants at issue show that both were served

on Anariba Martinez, the First Warrant on May 9, 2026, in the Emmet County Jail, and the Second

Warrant on May 13, 2026, in Sioux City, Iowa. Filing 11 at 4, 13. Federal Respondents also argue

that unlike 8 U.S.C. § 1226, 8 U.S.C. § 1225 does not require a warrant, so that even if Anariba

23

Martinez's arrest was "warrantless," it was permissible. Filing 11 at 14. That argument does not squarely address Anariba Martinez's argument that § 1357's requirements for a warrantless search were not met.

In reply, Anariba Martinez argues that the Detainer falsely asserted a final order of removal that did not exist; that the First Warrant was merely "lodged" with the jail "and is not supported by testimony from any person with personal knowledge of service." Filing 14 at 2. He also argues that the Second Warrant was "formally served" only after he was released to ICE custody. Filing 14 at 2. Anariba Martinez also argues that the handwriting in the Certification of Service on the Detainer does not match the handwriting of the person who completed the Detainer, so that Federal Respondents have not proved that it was actually served. Filing 14 at 8–10. Anariba Martinez also argues that his arrest on Iowa charges cannot be used as probable cause for his ICE arrest because those state charges were dismissed. Filing 14 at 12. He argues that there is also no evidence that the First Warrant was properly served, such as an affidavit from Officer Palmer or anyone else present at the time, so that it cannot justify his arrest. Filing 14 at 12–13. He also points to an "inconsistent" version of his name in the First Warrant as casting doubt on whether it was served on the right person. Filing 14 at 13. He asserts that the Second Warrant came too late to authorize a transfer to ICE custody and that the Federal Respondents have never explained why a Second Warrant was necessary. Filing 14 at 15. Thus, he argues that because the Warrants and the Detainer are invalid, Federal Respondents are required to but have failed to show that they satisfied § 1357(a)(2)'s requirements for a warrantless arrest. Filing 14 at 17.

### 3. Anariba Martinez's § 1357 Claims Are Legally and Factually Flawed

The Court will assume without deciding that an alien may challenge his arrest—as well as his detention—in a § 2241 habeas proceeding. The Court need not decide that question because

Anariba Martinez's claims based on alleged violations of § 1357 are otherwise legally and factually flawed, precluding habeas relief on them.

### a.    Deficiencies in the Detainer Are Unavailing

The Court finds unavailing Anariba Martinez's argument that a purportedly flawed Detainer demonstrates that his arrest did not comply with § 1357. Anariba Martinez has not cited and the Court has not found any authority supporting the argument that service of a valid I-247A detainer on an alien is a requirement for the arrest by ICE of an alien in the custody of state authorities. An ICE regulation states the purpose of such a detainer:

> A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a). The District of Columbia Circuit explained, "[A]n ICE detainer is a 'request,' not an order, for another law enforcement agency [to] hold a particular alien." *N.S. v. Dixon*, 141 F.4th 279, 282 (D.C. Cir. 2025). In other words, a detainer is a protective measure asking for cooperation from another law enforcement agency.

Section 287.7(a) does not even state that a detainer requests that another law enforcement agency "hold" an alien. Instead, § 287.7(a) expressly states that a "detainer is a request that such agency advise the Department, prior to release of the alien. . . ." Nevertheless, the Detainer in this case includes the following request:

> **IT IS THEREFORE REQUESTED THAT YOU:**
>
> Maintain custody of the individual for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. This detainer arises from OHS authorities and should not Impact decisions about the Individual's ball, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.

25

Filing 13-3 at 1 (emphasis in the original). Thus, the Detainer in this case does include a request (but not an order) that if necessary the Emmet County Jail hold Anariba Martinez for up to 48 hours after he would otherwise have been released. A mere protective request that another agency with custody of an alien advise ICE prior to release of the alien by the other agency and if necessary hold the alien for 48 hours after the other agency would otherwise have released the alien cannot reasonably be understood to be a precondition to arrest of an alien by ICE. More importantly, there is no evidence in the record that Anariba Martinez was held beyond the time that the Emmet County Jail would otherwise have released him to permit ICE to arrest him.

Furthermore, even if the "probable cause" statement in the Detainer provided to the Emmet County Jail for Anariba Martinez is erroneous—because it states that there is "[a] final order of removal" against Anariba Martinez when there was not—that erroneous statement does not affect the validity of Anariba Martinez's arrest. That probable cause statement was only to support the request that the Emmet County Jail notify ICE prior to releasing Anariba Martinez; it was not probable cause for Anariba Martinez's arrest. Again, Anariba Martinez has made no factual showing that a hold was required because he would otherwise have been released from state custody on bail or for any other reason or that the Emmet County Jail had any plan to release him before ICE could take him into immigration custody. *See Maldonado*, 2025 WL 2374411, at *4 (explaining that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)). Thus, a flawed statement of probable cause for a hold is irrelevant to the validity of ICE's arrest of Anariba Martinez.

### b. Anariba Martinez Fails to Show the First Warrant Was Invalid

Anariba Martinez's claim of a warrantless arrest in violation of § 1357 fares no better when it is based on his allegations that the Warrants for his arrest were faulty, do not properly identify

26

him, and were not properly served. Federal Respondents have submitted a copy of the First Warrant correctly basing probable cause to believe Anariba Martinez is removable from the United States because of "the pendency of ongoing removal proceedings against [him]." Filing 13-2 at 1. The First Warrant also shows that Anariba Martinez's identity was confirmed by "biometric confirmation" and "a records check" and by "statements made voluntarily by [him.]" Filing 13-2 at 1. Contrary to Anariba Martinez's allegations, the First Warrant was served on him personally on May 9, 2026, before he was taken into ICE custody. Indeed, the Certificate of Service on the Warrant shows that it was both served on Anariba Martinez and read to him in Spanish at Estherville, Iowa, on May 9, 2026. Filing 13-2 at 1.

Anariba Martinez's argument that there was no affidavit from Officer Palmer or anyone else present at the time, so service of the Warrant is somehow in doubt, Filing 14 at 12–13, is both frivolous and puts the burden of proof on the wrong party. *See Maldonado,* 2025 WL 2374411, at *4 (explaining that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)). The officer's signature on the Certificate of Service is uncontradicted evidence of service on Anariba Martinez in this case. Anariba Martinez's further reliance on an "inconsistent" version of his name in the Warrant as casting doubt on whether it was served on the right person is also frivolous. Filing 14 at 13. There is no reason to doubt that his identity was confirmed—as indicated in the Warrant—by biometric information, records, and his own statements. Filing 13-2 at 1. The Warrant shows Anariba Martinez's name as "ANARIBAZ-MARTINEZ, MARK" and an alias of "ANARIBAZ MARTINEZ, MARK ANTONY." Filing 13-2 at 2–3. Anariba Martinez alleges in his Petition that "DHS's eROP uses several spelling variations for Petitioner's name, including

27

Anaribaz-Martinez, Mark Antony, and Anariba-Martinez, Marck Antony," without disputing—as he belatedly tries to do in his brief—that these aliases identify him. Filing 1 at 5 (¶ 14).

Because Anariba Martinez has failed to carry his burden to show that the First Warrant was invalid, he cannot show that a "warrantless" arrest in violation of § 1357 occurred. Consequently, habeas relief is denied on the claims in Counts I through IV.

### C.  Detention Without Bond

The next three Counts of Anariba Martinez's Petition challenge Anariba Martinez's detention without bond based on allegations that 8 U.S.C. § 1225 is inapplicable. The Court concludes that no habeas relief is warranted on these claims.

#### 1.  The Claims

Count V asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Denial of Bond on the Theory that Petitioner Is Subject to 8 U.S.C. § 1225(b)(2) Despite His UAC/ORR Custody and Release History." Filing 1 at 19 (reduced from all capital letters). This Count alleges,

> Because Petitioner was encountered as an unaccompanied child, transferred to ORR/HHS custody pursuant to 8 U.S.C. § 1232 and 6 U.S.C. § 279, and later released through the ORR sponsor-release framework rather than on parole under 8 U.S.C. § 1182(d)(5) and his detention could therefore never be under 8 U.S.C. § 1225 *or* 1226, Respondents act arbitrarily, capriciously, not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, and without observance of procedure required by law in denying Petitioner bond on the theory that he remains subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

Filing 1 at 19 (Count V, ¶ 2) (emphasis in the original).

Count VI asserts a claim entitled "Violation of the Fifth Amendment of the United States Constitution Arising from Denial of Bond on the Theory that Petitioner Is Subject to 8 U.S.C. § 1225(b)(2) Despite His UAC/ORR Custody and Release History." Filing 1 at 19 (reduced from all capital letters). This Count alleges,

28

> Because Petitioner's original custody and release were governed by the UAC/ORR statutory framework and not by parole under 8 U.S.C. § 1182(d)(5) and his detention could therefore never be under 8 U.S.C. § 1225 *or* 1226, Respondents violate[d] the Fifth Amendment by depriving Petitioner of any meaningful bond process on the ground that he is categorically subject to 8 U.S.C. § 1225(b)(2).

Filing 1 at 19–20 (Count VI, ¶ 2) (emphasis in the original).

Count VII asserts a claim entitled "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(a), (c), and (d), Arising from Respondents' Reversal of Their Own Prior Treatment of Petitioner as a Section 236 [8 U.S.C. § 1226] Detainee." Filing 1 at 20 (reduced from all capital letters) (bracketed language inserted). This Count alleges,

> Because DHS previously treated Petitioner as a section 236 [8 U.S.C. § 1226] detainee through the very paperwork it issued, including the Notice to Appear and in accordance with 8 U.S.C. § 1232(a)(5)(D) and 8 C.F.R. § 236.3(d), Respondents acted arbitrarily, capriciously, not in accordance with law, in excess of statutory authority, and without observance of procedure required by law by later reversing course and denying bond on the theory that Petitioner was instead always subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

Filing 1 at 20 (Count VII, ¶ 2) (bracketed language inserted).

### 2. *The Parties' Arguments*

Anariba Martinez argues that "[t]he dispositive point is whether Respondents invoked [§ 1225(b)(2) detention] authority here and whether they may now rely on it despite [his] distinct minor/UAC and section 240 history." Filing 1 at 12. Anariba Martinez argues that a minor who is processed into INA 240 (8 U.S.C. § 1229a) proceedings under the UAC framework is not transformed into an unreviewable mandatory detainee years later merely because ICE chooses to relabel the detention after arrest. Filing 1 at 2. He argues that UACs are placed in INA 240 (8 U.S.C. § 1229a) removal proceedings pursuant to 8 U.S.C. § 1232(a)(5)(D). Filing 1 at 6. He argues further that 8 C.F.R. § 236.3(m) permits IJ review of bond determinations for minor children in DHS custody during INA 240 removal proceedings. Filing 1 at 9 (¶ 39). He argues, "This regulation would make no sense if DHS could later erase the section 240/minor framework

by recharacterizing the same person's custody as unreviewable mandatory detention." Filing 1 at 9 (¶ 38). He also argues that I-200 warrants are "tied" to § 1226 custody under 8 C.F.R. § 1236.1(b)(1). Filing 1 at 10 (¶ 40). Indeed, he argues that the Warrants in his case expressly "invoke[e]" INA 236 (8 U.S.C. § 1226). Filing 14 at 2, 13. He contends that "most importantly" the First Warrant does not state that he was detained under 8 U.S.C. § 1225(b). Filing 14 at 13. Anariba Martinez argues that it is also significant that when ICE encountered him in May 2026, ICE did not identify him as a newly arriving applicant at the border or represent that he was such an arriving applicant on the New NTA, apparently suggesting that he therefore was not subject to § 1225 as an "arriving alien." Filing 1 at 12 (¶ 49). He argues that DHS cannot treat him as a section 240 respondent when it serves the NTA, when it maintains the immigration court case, and when it files detention documents in EOIR, then treat him as a detainee subject to unreviewable mandatory detention when he asks for a bond. Filing 1 at 13 (¶ 50).[6]

Federal Respondents argue that, under the controlling Eighth Circuit decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), Anariba Martinez is an alien present in the country but not admitted, so he is deemed an applicant for admission and subject to mandatory detention pending removal proceedings pursuant to 8 U.S.C. § 1225. Filing 11 at 1, 9. They argue that Anariba Martinez's prior UAC status does not change that. Filing 11 at 1, 9. Federal Respondents argue that Anariba Martinez's UAC status ended when he was released to his sister and/or when he turned 18. Filing 11 at 2–3. They argue further that even a lengthy stay in this country on parole or other conditional status does not change an alien's status as an "applicant for admission" within the meaning of § 1225(a) who is subject to mandatory detention under § 1225(b). Filing 11 at 11.

---

[6] Again, there is no evidence in the record that Anariba Martinez or his counsel ever asked for a bond hearing, even at the hearing on June 16, 2026, in Anariba Martinez's removal proceedings at which Anariba Martinez's counsel requested more preparation time. Filing 13 at 4 (¶ 18).

30

Federal Respondents also argue that the references to INA 236 (§ 1226) at the top of the Warrants for Anariba Martinez's arrest do not indicate the basis for his arrest and detention but only the authorization required for officers who can make the arrest. Filing 1 at 14–15. Finally, Federal Respondents contend that even if the references to INA 236 on the Warrants somehow indicated that Anariba Martinez was arrested under § 1226, that would not prevent ICE from detaining him under § 1225 if he also fell under that statute. Filing 11 at 15.

In reply, Anariba Martinez argues that this is not a simple *Avila* case but a case involving an alien whom the government admits was encountered as a minor, placed in section 240 proceedings, released to his sister "due to being a UAC," and then re-detained years later through "defective" Warrants that nevertheless invoked sections 236 and 287. Filing 14 at 1–2. He reiterates that under 8 C.F.R. § 236.3(m) minors in DHS custody and in section 240 removal proceedings are entitled to a bond determination, but such minors not in section 240 proceedings are ineligible for review of custody determinations. Filing 14 at 3–4. He reiterates that this status means that Federal Respondents cannot use his UAC history only when it is "convenient" because he had section 240/section 236 status from the beginning and there is no evidence of any revocation of that status. Filing 14 at 4. He asserts that his argument is not that UAC status is "immutable," but that neither release to his sister (who was not a parent or legal guardian) nor aging-out retroactively transformed his prior section 240/ORR release to a sponsor into mandatory § 1225 custody. Filing 14 at 4. His argument appears to be that what is missing is evidence that he was ever released from prior status before he was "relabeled" as an alien in § 1225 custody. Filing 14 at 5.

### 3.  *Anariba Martinez's Detention Without Bond Was Appropriate*

Although Anariba Martinez denies that his argument is that his UAC status is "immutable," Filing 14 at 4, he certainly argues that his prior UAC status means that he cannot now be detained

under § 1225(b) with no possibility of a bond. He also appears to assert that UAC status and section 240 removal proceedings mean that he is detained under § 1226 and entitled to bond proceedings. The Court must determine the impact of his prior UAC release on his subsequent detention.

a. Anariba Martinez's Reliance on His Prior UAC Release Is Unavailing

The problem with Anariba Martinez's arguments based on his prior UAC status is that such status ended at the latest when he turned 18, which would have been in September 2023, just a few months after he was released to the custody of his sister. As Federal Respondents point out, UAC status is defined in 6 U.S.C. § 279(g)(2), which states,

**(g) Definitions**

As used in this section—

\* \* \*

(2) the term "unaccompanied alien child" means a child who--

(A) has no lawful immigration status in the United States;

(B) has not attained 18 years of age; and

(C) with respect to whom--

(i) there is no parent or legal guardian in the United States; or

(ii) no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2) (emphasis in the original). Another federal statute, 8 U.S.C. § 1232(c), requires that these children to "be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A); *see also Doe 4 by & through Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327, 329 (4th Cir. 2021). Such placement may be with "a suitable family member." *Id.* (stating that a UAC may be placed in the Unaccompanied Refugee Minor program "if a suitable family member is not available to provide care").

If the matter was somehow unclear from the statutory age requirement for UAC status in

§ 279(g)(2), a pertinent regulation expressly states that UAC status ends when the alien reaches

the age of 18:

(d) Determining whether an alien is a UAC.

* * *

(2) Aliens who are no longer UACs. When an alien previously determined to have been a UAC has reached the age of 18, when a parent or legal guardian in the United States is available to provide care and physical custody for such an alien, or when such alien has obtained lawful immigration status, the alien is no longer a UAC. An alien who is no longer a UAC is not eligible to receive legal protections limited to UACs under the relevant sections of the Act. Nothing in this paragraph affects USCIS' independent determination of its initial jurisdiction over asylum applications filed by UACs pursuant to section 208(b)(3)(C) of the Act.

(3) Age-out procedures. When an alien previously determined to have been a UAC is no longer a UAC because he or she turns 18 years old, relevant ORR and ICE procedures shall apply.

8 C.F.R. § 236.3(d)(2)–(3). Thus, even if Anariba Martinez's UAC status had not ended after

placement with his sister as a suitable family member, he was "no longer a UAC" when he

"reached the age of 18." *Id.* at (d)(2). He then became subject to "relevant ORR and ICE

procedures." *Id.* at (d)(3).

The statute requiring the least restrictive placement for UACs also provides as follows:

[i]f a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and flight risk. . . .

8 U.S.C. § 1232(c)(2)(B). However, § 1232(c)(2)(B) does not apply here, because when Anariba

Martinez reached 18 years of age, he was not in the custody of the ORR but in the custody of his

sister and there is no evidence that he was ever transferred from the custody of the ORR to the

custody of DHS.

33

Even if Anariba Martinez had been transferred to DHS custody when he "aged out" of UAC status, "Section 1232(c)(2)(B)'s 'age-out' provision does not create a permanent right to an individualized bond redetermination whenever an alien who was formerly a UAC is arrested by ICE well after reaching the age of majority." *Sidhant v. Swearingen*, No. 2:26-CV-00281-JRO-MKK, 2026 WL 1424982, at *9 (S.D. Ind. May 20, 2026). "It appears that the only permanent protection former UACs may enjoy in Section 1232 after reaching the age of majority is the right to 'special immigrant status' 8 U.S.C. § 1101(a)(27)(J), but only if they applied for asylum while they were still a UAC. 8 U.S.C. § 1232(d)(6)." *Id.* at *10. Nothing in the record shows that Anariba Martinez applied for asylum before he turned 18, even accepting as true his allegation that he is waiting for the receipt notice on an asylum application. Thus, "nothing in the text of Section 1232 suggests that its statutory protections still apply to [Anariba Martinez]." *Id.* Where § 1232(c)(2)(B) does not apply to him, "there is no statutory basis to hold that he does not fall within the plain meaning of 'applicant for admission'" within the meaning of 8 U.S.C. § 1225(a). *Id.* In other words, where Anariba Martinez was no longer a UAC at the time he was arrested by ICE, he was "once again subject to the general rules for arriving aliens." *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 214 (S.D.N.Y. 2020).

Contrary to Anariba Martinez's arguments, ICE is not attempting to "erase" his prior UAC status and declare him a detainee subject to mandatory detention. Rather, at the time of his arrest by ICE on May 13, 2026, Anariba Martinez no longer enjoyed his prior UAC status and was only entitled to be treated like any other alien present in the United States without admission.

      b.   Neither the New NTA nor the Warrant Dictates the Statute under which Anariba Martinez was Detained

Anariba Martinez argues that his detention after his arrest by ICE was under § 1226 rather than under § 1225 because his New NTA and his Warrant say so. The May 27, 2025, New NTA

34

says no such thing. Instead, the box ticked to show the reason for § 240/§ 1229a removal proceedings states, "You are an alien present in the United States who has not been admitted or paroled" and charges that Anariba Martinez is removable under § 212(a)(6)(A)(i) (§ 1182(a)(6)(A)(i)) "in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Filing 13-1 at 1. It does not state that the basis of detention is either § 1225 or § 1226 or make any reference to eligibility for bond. Filing 13-1 at 1–4.

Nor does any warrant for Anariba Martinez's arrest indicate the statutory basis for his detention. The First Warrant directs "[a]ny immigration officer authorized pursuant sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. § 1226 and § 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants for immigration . . . to arrest and take into custody [Anariba Martinez] for removal proceedings under the Immigration and Nationality Act." Filing 13-2 at 1. The reference to "[a]ny immigration officer authorized pursuant to 236 [§ 1226]" does not demonstrate that Anariba Martinez was detained pursuant to § 1226(a). Rather, it states that the immigration officer arresting the alien must be "authorized pursuant to section[ ] 236." Filing 13-2 at 1. Section 236 (§ 1226(a)) permits the arrest of an alien "[o]n a warrant issued by the Attorney General," but that authorization for arrest on a warrant does not establish that the alien is or is to be detained under § 1226(a) when arrested. 8 U.S.C. § 1226(a). The post hoc issuance of an immigration warrant does not convert a § 235 (§ 1225) case into a § 236 (§ 1226) case. *See Matter of Q. Li*, 29 I&N Dec. 66, n.4 (BIA 2025)).

### c.  Anariba Martinez Is Subject to § 1225 Mandatory Detention Without Bond

At times, Anariba Martinez asserts that he was not in custody pursuant to either 8 U.S.C. § 1226, which permits release of an alien on bond during removal proceedings, or 8 U.S.C. § 1225,

which has no authorization for release on bond. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). At other times, Anariba Martinez asserts that he was in custody under § 1226, but never under § 1225. Thus, the next issue in the determination of Anariba Martinez's claims based on detention without bond is the statute pursuant to which he was detained.

> i.  Anariba Martinez Was Never Detained Pursuant to § 1226

When Anariba Martinez was taken into custody near the border in May 2023, he was not detained pursuant to 8 U.S.C. § 1226. Rather, as he has asserted, he was detained as a UAC and placed in the custody of the ORR. That means that his detention as a UAC was pursuant 8 U.S.C. § 1232. 8 U.S.C. § 1232(c)(2)(A) (explaining that a UAC must "be promptly placed in the least restrictive setting that is in the best interest of the child"). Anariba Martinez was shortly thereafter placed by ORR with his sister pending 240 removal proceedings, that is, removal proceedings under 8 U.S.C. § 1229a. Section 1229a says nothing about detention of a UAC or anyone else under § 1226. *See generally* 8 U.S.C. § 1229a. Although Anariba Martinez asserts that detention for removal proceedings under § 1229a is necessarily pursuant to § 1226, he cites nothing establishing that connection.

Importantly, when Anariba Martinez's UAC status ended in 2023 when he turned 18, so did his release status to his sister. As explained above, Anariba Martinez was then only entitled to be treated like any other alien present in the United States without admission, and the general rules for aliens present without admission "include[e] [8 C.F.R. §] 1003.19(h)(2)(i)(B)'s prohibition on bond hearings." *Decker*, 612 F. Supp. 3d at 214. Even if Anariba Martinez's continued presence in the United States after the end of his UAC status was considered some kind of "parole" or "release," it was not an "admission" to the United States. Parole under 8 U.S.C. § 1182(d)(5)(A),

is not an "admission," *see* 8 U.S.C. § 1101(a)(13)(B)), and Anariba Martinez offers no convincing argument why parole or release as a result of the termination of UAC status should be any different.

> ii.  Anariba Martinez Was Detained Under § 1225(b) as an Applicant for Admission

"[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Anariba Martinez is such an alien.

In *Avila*, the Eighth Circuit explained,

In defining [applicant for admission], § 1225(a)(1) reads as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission.

*Avila*, 170 F.4th at 1133 (quoting § 1225(a)(1)). Anariba Martinez was present in the United States but was not admitted, so he plainly fell within the definition of an "applicant for admission" as interpreted by the Eighth Circuit.

Anariba Martinez's argument that he is not an "arriving alien" so he cannot fall within § 1225, is unavailing. First, § 1225 is not limited to an "arriving alien"; instead, it applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Thus, pursuant to § 1225(a), § 1225(b) applies not just to an "arriving alien" but also applies to an "alien present in the United States who has not been admitted."[7] Section 1225(b)(2)—which Respondents argue applies to Anariba Martinez—does not mention an "arriving alien" at all; instead, it applies to "an alien who is an applicant for admission." 8 U.S.C.

---

[7] Section 1225(b)(1) does refer to "aliens arriving in the United States," but also applies to "certain other aliens who have not been admitted or paroled," 8 U.S.C. § 1225(b)(1)—and no party has argued § 1225(b)(1) applies to Anariba Martinez.

§ 1225(b)(2)(A). Thus, an alien to whom § 1225(b)(2)(A) applies could be either an "arriving alien" or an alien like Anariba Martinez "present in the United States who has not been admitted," as stated in § 1225(a).

Anariba Martinez's treatment as a UAC did not change his "applicant for admission" status. As explained above, parole under 8 U.S.C. § 1182(d)(5)(A) is not an "admission," and Anariba Martinez offers no argument why treatment as a UAC released to the custody of a relative or thereafter released on the expiration of his UAC status should be any different. "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila,* 170 F.4th at 1132 (quoting § 1225(b)(2)). No DHS or ICE official made any such determination that Anariba Martinez was entitled to be admitted.

Just as importantly, in connection with Anariba Martinez's re-detention, on May 27, 2025, DHS had issued Anariba Martinez the New NTA notifying him that he is "an alien present in the United States who has not been admitted or paroled." Filing 13-1 at 1. The New NTA expressly charged that Anariba Martinez is removable from the United States. Filing 13-1 at 1. Thus, Anariba Martinez's re-detention is for the purpose of removal pursuant to § 1225(b), and he is not entitled to release on bond. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

Thus, because Anariba Martinez failed to carry his burden to show that his detention without bond under 8 U.S.C. § 1225 is improper, habeas relief is denied on the claims in Counts V, VI, and VII of his Petition.

### D. Detention in Violation of Regulations

*1. The Claims and the Regulations*

The last two Counts of Anariba Martinez's Petition allege violations of certain regulations. Count VIII asserts a claim entitled "Violation of 8 C.F.R. §§ 236.1 and 1003.19." Filing 1 at 20 (reduced from all capital letters). This Count alleges,

> Because Respondents previously treated Petitioner as detained under section 236 [8 U.S.C. § 1226], they were required to afford him the procedures set forth in 8 C.F.R. § 236.1 and 8 C.F.R. § 1003.19, including the opportunity to request amelioration of custody conditions and obtain a custody determination on the merits. By refusing to afford that opportunity and instead insisting there was no jurisdiction to consider bond at all, Respondents violated 8 C.F.R. §§ 236.1 and 1003.19.

Filing 1 at 21 (Count VIII, ¶ 2) (bracketed language inserted). Count IX asserts a claim entitled "Violation of the Fifth Amendment of the United States Constitution Arising from Violation of 8 C.F.R. §§ 236.1, 236.3(m) and 1003.19." Filing 1 at 21 (reduced from all capital letters). This Count alleges,

> Because Respondents deprived Petitioner of the custody-review procedures required by 8 C.F.R. § 236.1, 236.3(m) and 8 C.F.R. § 1003.19, and because Respondents would refuse to provide a custody hearing based on *Matter of N-A-G-C-*, 29 I & N, Respondents deprived Petitioner of liberty without due process of law in violation of the Fifth Amendment.

Filing 1 at 21 (Count IX, ¶ 2).

One regulation on which Anariba Martinez relies in support of these claims is 8 C.F.R. § 236.3(m). That regulation provides,

> (m) Bond hearings. Bond determinations made by DHS for minors who are in removal proceedings pursuant to section 240 of the Act and who are also in DHS custody may be reviewed by an immigration judge pursuant to 8 CFR part 1236 to the extent permitted by 8 CFR 1003.19. Minors in DHS custody who are not in section 240 proceedings are ineligible to seek review by an immigration judge of their DHS custody determinations.

8 C.F.R. § 236.3(m).

Another regulation on which Anariba Martinez relies is 8 C.F.R. § 236.1(d)(1)). That regulation states the following:

(d) Appeals from custody decisions—

(1) Application to immigration judge. After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter. If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release.

8 C.F.R. § 236.1(d)(1) (bracketed language inserted). The last regulation on which he relies states, "(a) Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236." 8 C.F.R. § 1003.19(a).

*2. The Parties' Arguments*

In support of these Counts, Anariba Martinez argues that under 8 C.F.R. § 236.3(m), bond determinations made by DHS for minors who are in removal proceedings pursuant to section 240 and who are also in DHS custody may be reviewed by an immigration judge pursuant to 8 C.F.R. part 1236 to the extent permitted by 8 C.F.R. § 1003.19. Filing 1 at 9 (¶ 38), 13 (¶ 51). He argues that this regulation would make no sense if DHS could later erase the section 240/minor framework by recharacterizing the same person's custody as unreviewable mandatory detention. Filing 1 at 9 (¶ 38). He contends further that the aging out of a UAC does not change the treatment of their entry and subsequent treatment of their custody. Filing 1 at 13 (¶ 51). Anariba Martinez also argues that a person detained under section 236(a) (§ 1226) is entitled to a bond hearing under 8 C.F.R. §§ 236.1(d)(1) and 1003.19(a). Filing 1 at 10 (¶ 39).

40

Federal Respondents assert that these Counts are premised on mistaken notions that Anariba Martinez's arrest was improper and that he could only be detained under 8 U.S.C. § 1226. Filing 11 at 5. Thus, they argue that relief should be denied on these Counts for the same reasons that Anariba Martinez is not entitled to relief on his other claims. Filing 11 at 5.

### 3. The Cited Regulations Do Not Require a Bond Hearing for Anariba Martinez

#### a. 8 C.F.R. § 236.3(m) Is Irrelevant Because Anariba Martinez Was Never in DHS Custody and Is No Longer a UAC

The Eighth Circuit has explained that when interpreting the language of a federal regulation, courts "first consider the plain language of [the regulation], asking 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Select Specialty Hosp. - Sioux Falls, Inc. v. Brentwood Hutterian, Brethren, Inc.*, 81 F.4th 793, 797 (8th Cir. 2023) (quoting *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009)). In view of its plain language, 8 C.F.R. § 236.3(m) is inapplicable to Anariba Martinez's current circumstances.

By its plain and express terms, § 236.3(m) authorizes an immigration judge to review bond determinations by DHS for minors in removal proceedings "who are also in DHS custody." 8 C.F.R. § 236.3(m). As explained above in § IV.C.3.a, Anariba Martinez was never in DHS custody. He was placed in ORR as a UAC, then released to his sister, then his UAC status terminated when he reached 18 years of age. Just as importantly, the regulation applies to "minors in removal proceedings," but Anariba Martinez was not a minor at the time that his removal proceedings were properly instituted with the filing of the New NTA on May 27, 2025, almost a year before Anariba Martinez's re-detention. Filing 13 at 5 (¶ 15) (averring that ICE ERO discovered that the original NTA for Anariba Martinez—who by that time was over 18 years old—was not filed with the immigration courts, so a new NTA was filed on May 27, 2025).

41

Thus, to the extent that Anariba Martinez relies on 8 C.F.R. § 236.3(m) in the last two Counts of his Petition, he is not entitled to habeas relief on those Counts.

> b. 8 C.F.R. §§ 261.1(d) and 1003.19(a) Do Not Apply to Aliens Detained under 8 U.S.C. § 1225

Courts to consider the matter have concluded that 8 C.F.R. §§ 236.1(d)(1) and 1003.19 "implement Section 236 of the INA, that is, 8 U.S.C. § 1226," so those bond regulations "do not apply to" an alien detained pursuant to 8 U.S.C. § 1225. *Habib v. Swearingen*, No. 2:26-CV-00373-JRO-MKK, 2026 WL 1741216, at *9 (S.D. Ind. June 17, 2026); *see also Singh v. Andrews*, No. 1:26-CV-00791-KES-CDB (HC), 2026 WL 959976, at *3 (E.D. Cal. Apr. 9, 2026) (explaining that 8 C.F.R. Part 1236 is "the regulations which implement 8 U.S.C. § 1226"). The Court determined above in § IV.C.3.c. that Anariba Martinez is subject to § 1225 mandatory detention, because he was never detained under § 1226 and, pursuant to *Avila*, 170 F.4th at 1132, his detention under § 1225 was proper because he is an "applicant for admission."

Thus, to the extent that Anariba Martinez relies on 8 C.F.R. §§ 236.1(d)(1) and 1003.19(a) in the last two Counts of his Petition, he is not entitled to habeas relief on those Counts.

## V. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.     Petitioner Anariba Martinez's Motion for Summary Judgment and to Grant Habeas Petition as Unopposed, Filing 10, is denied; and

2.     Petitioner Anariba Martinez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Filing 1, is denied in its entirety.

Dated this 22nd day of July, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge